UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>STANLEY LEE LUMBARDY,<br><br>               Defendant. | CR. 19-50107-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Stanley Lee Lumbardy, appearing *pro se*, filed a motion for compassionate release and appointment of counsel, together with a number of supporting documents. (Dockets 71 and 71-1). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Lumbardy's motion. (Dockets 72-76). For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 20-6**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1]See https://www.sdd.uscourts.gov/socraa ("SO 20-06"). The Federal Court for the District of South Dakota implemented Standing Order 23-02 on April 4, 2023, addressing compassionate release proceedings. The new standing order does not impact the court's analysis of the parties' submissions.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. at ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. at ¶ 2.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

2

> d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## MR. LUMBARDY'S CLASSIFICATION

On August 4, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release. (Docket 72). They jointly "agree that this case should be categorized an Intermediate Priority case." Id.

## FACTUAL BACKGROUND

On August 17, 2021, Defendant Stanley Lumbardy was sentenced to a term of 60 months in the custody of the Bureau of Prisons ("BOP") for his conviction for attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Docket 69). This sentence was the statutory minimum term of imprisonment mandated by 18 U.S.C. § 2252A(b)(1). But for this mandatory minimum sentence, according to Mr. Lumbardy's presentence report ("PSR") (Docket 62) "[b]ased on a total offense level of 19 and a criminal history category of I, the guideline imprisonment range [would have been] 30 months to 37 months." (Docket 62 at ¶ 52).

Mr. Lumbardy is currently an inmate at the United States Penitentiary in Englewood, Colorado ("FCI Englewood").[2] According to the BOP website, Mr. Lumbardy's release date is July 9, 2025. As of this order, Mr. Lumbardy has

---

[2]See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited March 31, 2023).

3

served approximately 40 percent of his sentence and his home detention eligibility date is January 9, 2025. (Docket 73 at p. 104). Mr. Lumbardy is 72 years old. Id.

Mr. Lumbardy's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic. (Docket 71). Mr. Lumbardy suffers from:

- Major depressive disorder. (Docket 73 at p. 24);
- Essential (primary) hypertension. Id.;
- Hyperlipidemia. Id.; and
- Anxiety disorder. Id.

## ANALYSIS

**A.  Legal Standard**

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy

4

statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. Id. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances. Id. There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of

Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D). These categories have not been updated since December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).

In this case, Mr. Lumbardy requested compassionate release from FCI Englewood's Warden on December 16, 2021.   (Docket 73 at p. 106).   The warden denied his request on December 28, 2021.   Id. at pp. 98-99.   Mr. Lumbardy has exhausted his administrative remedies.   18 U.S.C. § 3582(c)(1)(A).

B.      **Defendant's Motion for Compassionate Release**

Mr. Lumbardy argues his age, mental health conditions [major depressive disorder and anxiety disorder] and hypertension increase his risk of developing serious complications from COVID-19.   (Docket 74 at p. 6). Acknowledging "he has received three doses of the Moderna vaccine," Mr. Lumbardy submits he "remains susceptible to COVID-19 as new variants develop."   Id.   He contends that according to the scientific literature these new variants "are four times more resistant to antibodies from vaccines than BA.2, a subvariant that became the dominant strain in the United States in April [2022]."   Id. at p. 7 (internal citation omitted).   Plus, he argues "people who [are] over 65 make up . . . 69 percent of hospitalizations [for COVID-19] among fully vaccinated people."   Id. (internal citation omitted).   At his age, "in the prison environment," Mr. Lumbardy submits his "mental and physical condition[s] are deteriorating and he has limited ability to care for himself." Id. at p. 10.

7

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Lumbardy argues "a reduction in sentence to time served is warranted in light of his age, health conditions, his personal history and characteristics, and the nature and circumstances of the offense." Id. at p. 11. While acknowledging the seriousness of his offense, Mr. Lumbardy points out "[h]e had no criminal history before this case." Id. (referencing PSR ¶¶ 24-27). "[H]e sought psychotherapy" before sentencing and "[h]is psychologist believed that he was not at risk of reoffending." Id. (referencing Docket 71-1 at p. 2). After his arrest, Mr. Lumbardy highlights that he entered "couples therapy with his wife." Id. (referencing Docket 71-1 at p. 2).

While incarcerated in the BOP, Mr. Lumbardy points out he has had no disciplinary violations and "has completed courses in cooking, woodworking, trees and shrubs, religion, family reunification, money management, birding, cognitive changes, finance, history, and self-confidence." Id. at p. 12 (referencing Docket 73 at p. 101). If granted a reduction in sentence to time served, Mr. Lumbardy would agree to "a period of home confinement as a condition of supervised release." Id. His post-custody plan is to live with his wife in Spearfish, South Dakota, and support himself with "a savings account, Social Security retirement benefits, his Texaco retirement fund, . . . his fully funded lifetime annuity. . . . Medicare and a supplemental health insurance plan." Id.

**C.     THE GOVERNMENT'S RESPONSE**

In response, the government opposes Mr. Lumbardy's motion for compassionate release.  (Docket 75).  The government recognizes Mr. Lumbardy suffers from "a major depressive disorder and essential hypertension," which are "conditions listed on the CDC's list of conditions more likely to make a person get very sick from COVID-19."  Id. at p. 2.  The government's principal argument is that defendant's "vaccination mitigates his risk from COVID-19, even in light of any medical conditions he might have." Id.  Because Mr. Lumbardy has received three COVID-19 vaccinations in 2022, the government argues he "has not shown extraordinary and compelling circumstances required for release based on his medical conditions or susceptibility to COVID-19."  Id. at p. 3.

Additionally, the government argues Mr. Lumbardy's conditions, major depressive disorder and essential (primary) hypertension, are managed by prescription drugs provided by the BOP.  Id. at p. 8.  As a "Care Level 2" classified inmate by the BOP, that is, an inmate who is a "stable outpatient[], requiring at least quarterly clinician evaluation," the government contends Mr. Lumbardy's "conditions are being monitored, medicated, and treated appropriately."  Id. at p. 9 (referencing https://www. bop.gov/resources/pdfs/ legal_guide_march_2019.pdf).  "Chronic conditions that can be managed in prison," submits the government, "are not a sufficient basis for compassionate release."  Id. at p. 11 (internal citations omitted).

9

If the court is inclined to grant Mr. Lumbardy's motion, the government contends a period of home confinement equivalent to the remaining period of his custody sentence should be imposed.  Id. at p. 14.

**D.    DEFENDANT'S REPLY**

In reply, Mr. Lumbardy argues the government's reliance on the United States Sentencing Guideline Section 1B1.13 is misplaced and "inconsistent with Eighth Circuit law."  (Docket 76 at p. 1).  Mr. Lumbardy reminds the court that "[t]he Eighth Circuit has held that the commentary to § 1B1.13 is advisory and not binding."  Id. (citing United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) ("The commentary relevant to determining whether [defendant's] medical conditions are extraordinary and compelling reasons for a sentence reduction, USSG § 1B1.13, comment. (n.1(A)(ii)), is advisory not prohibitive.").

Mr. Lumbardy argues that as an older adult he is "at the highest risk of getting very sick from COVID-19 [who] . . . account for most COVID-19 deaths." Id. at p. 3 (internal citation omitted).  He submits his advanced age is a significant risk factor overlooked by the government.  Id.  Because "[t]he compassionate release statute gives this court the opportunity to impose a sentence that reflects all of the circumstances of this case, including [his] advancing age and deteriorating physical and mental health," Mr. Lumbardy seeks "a reduced sentence of time served."  Id. at p. 5.

10

**E.    DECISION**

    A.    EXTRAORDINARY AND COMPELLING REASONS

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  See also Marcussen, 5 F.4th at 859.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

According to the Centers for Disease Control ("CDC"), "older adults are at highest risk of getting very sick from COVID-19.  More than 81% of COVID-19 deaths occur in people over age 65.  The number of deaths among people over age 65 is 97 times higher than the number of deaths among people ages 18-29 years."  https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 4, 2023).  Mood disorders, including major depression, and hypertension are health factors which "can make you more likely to get very sick from COVID-19."  Id.

11

In conjunction with his age and serious health conditions, Mr. Lumbardy's incarceration exacerbates the risk of infection. FCI Englewood currently has one COVID-19 positive inmate and no positive staff members. https://www.bop.gov/coronavirus/(last visited April 4, 2023). Though currently there are few active cases of COVID-19 among inmates at FCI Englewood, that has not previously been the case. With a population of 1,104 inmates, FCI Englewood has had 391 inmates and 139 staff members recover and two inmates have died from COVID-19. Id.

The CDC has identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated August 11, 2022). The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks. See BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020). This includes the BOP's recent implementation of a COVID-19 vaccination program. As of April 4, 2023, the BOP has administered 349,408 doses of COVID-19 vaccines systemwide. https://www.bop.gov/coronavirus/(last visited April 4, 2023).

Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting.

Nor can the court ignore the potential of infection when the risk for Mr. Lumbardy is significant.  The new strains and variants of COVID-19 only add to the risk and uncertainty.  At age 72 with major depression, anxiety disorder and hypertension, Mr. Lumbardy is among the individuals the CDC deems to be at a higher risk of developing serious complications or death if he were to contract COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Based on a careful review of his medical records detailing the conditions he faces, the court finds Mr. Lumbardy's major health issues are chronic.  That is, his conditions will only persist and likely worsen over time.  During the COVID-19 pandemic, Mr. Lumbardy's conditions significantly diminish his ability to provide self-care within the environment of a correctional facility, putting him at risk of severe illness—and even death—should he contract the virus.  The court finds Mr. Lumbardy's chronic and severe medical conditions make him especially vulnerable to COVID-19, even compared to other individuals incarcerated in FCI Englewood or other BOP facilities.  Mr. Lumbardy's mandatory minimum sentence was not intended to be a death

sentence.  United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020).

The court finds Mr. Lumbardy meets his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

B.   SECTION 3553(a) FACTORS

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors.  Those sentencing factors are:

1.  the nature and circumstances of the offense and the history and characteristics of the defendant;

2.  the need for the sentence imposed—

   a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b.  to afford adequate deterrence to criminal conduct;

   c.  to protect the public from further crimes of the defendant; and

   d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

In Mr. Lumbardy's case, the "nature and circumstances of the offense"—attempted receipt of child pornography—is serious.  18 U.S.C. § 3553(a)(1). "[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S.

14

81, 113 (1996). Other than the current offense, Mr. Lumbardy has no criminal history. See PSR ¶¶ 25 & 26. His total criminal history score for purposes of the U.S.S.G. calculations was "0." Id. ¶ 27.

The court finds Mr. Lumbardy has conducted himself in a positive manner while in BOP custody. As of April 9, 2023, he has served 40 percent of his 60-month sentence without any disciplinary write-ups and has been an active participant in BOP programing. (Docket 73 at pp. 100-101 & 105). He is considered a low security risk. Id. at p. 102. Based on this information as well as a review of Mr. Lumbardy's PSR and other documents considered at the 2021 sentencing hearing, the court believes Mr. Lumbardy is a low to no risk of reoffending in either the offense of conviction or any other offense for that matter.

At sentencing, the court was not permitted to consider the § 3553(a) factors for a sentence below the mandatory minimum sentence. Based on the court's policy disagreement with United States Sentencing Guidelines § 2G2.2(b)(6), relating to the use of a computer to commit the offense, the court would have varied downward to a total offense level of 17, which with a criminal history I would have resulted in a total guideline range of imprisonment of 24 months to 30 months. (Docket 69-1 at p. 5). In the court's view a downward variance from the Sentencing Guidelines, without consideration of the mandatory minimum sentence, would have "reflect[ed] the seriousness of the offense, . . . promote[d] respect for the law, and . . .

15

provide[d] just punishment for the offense . . . [and would have] afford[ed] adequate deterrence to [future] criminal conduct" by the defendant.  18 U.S.C. §§ 3553(a)(2)(A) & (B).

Considering the length of the defendant's time in prison and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant."  Id. § 3553(a)(2)(C).  Mr. Lumbardy's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner." Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[ ] of sentence[ ] available."  Id. at § 3553(a)(3).  A noncustodial sentence will limit Mr. Lumbardy's liberty interests through supervised release, and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody. United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), rev'd, 446 F.3d 884 (8th Cir. 2006), rev'd, 552 U.S. 38 (2007).  The sentencing statute mandated a mandatory minimum sentence, but this is just one factor for the court to consider.  18 U.S.C. § 3553(a)(4).  At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Id. at § 3553(a)(6).  The court finds compassionate release is appropriate and Mr. Lumbardy will not pose a danger to the public.

On careful balance of the § 3553(a) factors, the court finds compassionate release is appropriate. The court concludes Mr. Lumbardy's time in custody was sufficient to adequately deter him from future criminal conduct. The government's concerns that Mr. Lumbardy has not served enough of his sentence in custody will be addressed through conditions of supervised release which will include imposing a lengthy period of home confinement. This will further limit Mr. Lumbardy's liberty interests. He will face harsh consequences if he violates his conditions of supervised release.

C. CONCLUSION

Mr. Lumbardy met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). The court does not have authority to modify the defendant's sentence to home confinement. United States v. Amarrah, 458 F. Supp.3d 611, 620 (E.D. Mich. 2020). The court does, however, retain the authority to reduce Mr. Lumbardy's sentence to time served and impose a condition of home detention as a condition of his supervised release. See id.

Following his release from custody, Mr. Lumbardy will remain on supervised release for five years, subject to the mandatory and standard conditions and the special conditions of supervised release imposed in the original sentence. (Docket 39 at pp. 4-5). The court further imposes an additional special condition of supervised release of home confinement for a period of 24 months.

17

**ORDER**

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 71) is granted.

IT IS FURTHER ORDERED that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that this order is stayed for two weeks from the date of the order to permit the Bureau of Prisons and Probation Office to assist Mr. Lumbardy's transition from custody to release status.

IT IS FURTHER ORDERED that upon his release, Mr. Lumbardy shall reside at his home in Spearfish, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Lumbardy must report, by telephone, 605-339-5920, to the United States Probation and Pretrial Services Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota, 57701.

IT IS FURTHER ORDERED that Mr. Lumbardy shall remain on supervised release for five years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the sentence of August 17, 2021.   (Docket 69 at pp. 4-5).

IT IS FURTHER ORDERED that court further imposes an additional special condition of supervised release of home confinement for a period of 24

months and the defendant shall comply with the terms of the Home Confinement Participant Agreement.   In its discretion, the United States Probation Office may utilize appropriate location monitoring technology to ensure defendant's compliance with home confinement.

    IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

    IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

    Dated May 5, 2023.

                                        BY THE COURT:

                                        /s/ *Jeffrey L. Viken*
                                        JEFFREY L. VIKEN
                                        UNITED STATES DISTRICT JUDGE